**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JASON KEITH KEISER,** | : | |
| **Petitioner** | : | **CASE NO. 3:17-CR-251** |
| **v.** | : | **(JUDGE MANNION)** |
| **UNITED STATES OF AMERICA** | : | |
| **Respondent** | : | |

## <u>MEMORANDUM</u>

Pending before the court is petitioner Jason Keith Keiser's counseled Motion to Vacate, Set Aside or Correct, his 270-month sentence to imprisonment imposed on October 9, 2018. (Doc. 39). Keiser pleaded guilty to production of child pornography by a guardian in violation of 18 U.S.C. §2251(b). Keiser was represented by Glenn M. Goodge, Esq., trial counsel. Keiser is currently incarcerated on related state charges. Keiser's motion is filed pursuant to 28 U.S.C. §2255 and is based upon several ineffective assistance of trial counsel claims. Specifically, Keiser raises 23 claims of ineffectiveness of counsel, including claims that his counsel failed to investigate his mental competency at the time of the offenses and pending trial, and failed to request his mental health evaluation by an expert. (*See* Doc. 39 at 6-8). Many of Keiser's claims overlap.

As relief, Keiser requests the court to vacate his sentence.

Keiser's motion has been briefed and Exhibits were filed.

1

Upon the court's review of the record in this case, the motion, as well as the briefs, Keiser's §2255 motion will be **DENIED** without the need for an evidentiary hearing.

## I.   BACKGROUND[1]

On February 6, 2018, Keiser, pursuant to a written plea agreement, pled guilty to the one offense contained in the Indictment, namely, production of child pornography by a guardian, in violation of 18 U.S.C. §2251(b). (Doc. 1). In his signed plea agreement and acknowledgement of rights waived by guilty plea, (Docs. 19 & 20), Keiser acknowledged that the maximum sentence he faced was 30-years' imprisonment and that the charge to which he was pleading guilty carried a mandatory minimum sentence of 15 years in prison. Keiser understood that he was waiving his right to a trial by pleading guilty. Keiser indicated that he was satisfied with his counsel's representation of him and that he entered his guilty plea voluntarily and with full knowledge of the rights he was giving up. He further specifically admitted that what the government alleged about him in Count 1 of the Indictment was true and that he committed the offense charged. Keiser was also advised that the court was not a party to the plea agreement and was not bound by it, and that it

---

[1] Since the complete factual background of this case is detailed by the parties in their respective filings as well as the transcripts from Keiser's guilty plea hearing, (G.Tr.), and sentencing hearing, (S.Tr.), it shall not be fully repeated herein. (*See also* Doc. 29, PSR, at 3-6).

could impose any sentence up to the maximum sentence of 30 years' imprisonment. Further, Keiser agreed that he would not be allowed to withdraw his guilty plea solely based on his dissatisfaction with his sentence. Keiser was also advised that he would have to register as a sex offender as a condition of his supervised release after he served his prison sentence. Additionally, Keiser waived his right to appeal his conviction and sentence.

At his guilty plea hearing, Keiser specifically admitted the underlying facts detailed by the government regarding the production of child pornography by a guardian offense after he represented to the court that he was not on any medications and that he understood the nature of the proceeding. Keiser indicated that he was satisfied with his counsel and that he had enough time to discuss the case with his counsel. (G.Tr., pp. 3-7). The court also conducted a thorough plea colloquy during which Keiser repeatedly indicated that he understood all of the rights he was giving up by pleading guilty and, indicated that he was voluntarily and knowingly pleading guilty. (Id. at pp. 2-23). Based on Keiser's sworn representations and the court's finding that he was competent to plead guilty, the court accepted his plea and ordered a presentence investigation report ("PSR"). (Id. at pp. 3, 22).

The PSR indicated that when Keiser was arrested in May 2017, he admitted to federal agents his involvement in trading self-produced child pornography images and videos. Also, a forensic examination of Keiser's electronic devices revealed numerous images and videos of prepubescent

males and females displaying their genitalia and/or engaging in sexual activity, and a review of his accounts revealed in excess of 2,000 images and multiple videos of child pornography. At his guilty plea hearing, Keiser, of his "own free will" admitted to all of the disturbing underlying facts that formed the basis for the offense to which he pled guilty. (G.Tr. at pp. 17-20 & Doc. 29 at 4).

The PSR also indicated that Keiser, then age 26, suffered an injury when he was 17 years old resulting from an incident during which he passed out and slammed his head on the ground. (Doc. 29 at 11, PSR ¶44). The PSR noted that the defendant reported that he had a difficult time recalling his childhood due to the head injury suffered when he was approximately 17 years old, but the defendant nevertheless provided a detailed description of a chaotic childhood in which he "moved a lot." (PSR ¶44). Keiser also alleged that he "experiences memory loss and swelling on the brain." (Id. at 12, ¶47). The PSR noted hospital records showing that, on May 31, 2013, the defendant reported to Lehigh Valley Hospital for a headache caused by a fall and he was diagnosed with a concussion. The PSR indicated that the defendant reported to the hospital on at least 11 occasions for various complaints such as shoulder pain, headaches and urination problems. (Id.).

The PSR indicated that the defendant graduated from Parkland High School, Allentown, on June 8, 2010. (PSR ¶50). He had a 2.03 grade point average (4.0 scale) and ranked 711 of 778 students. The PSR noted that the defendant participated in an individualized education program.

4

The PSR determined that Keiser was a "repeat and dangerous sex offender against minors," requiring a 5-level increase in his offense level pursuant to U.S.S.G. §4B1.5(b)(1), resulting in an adjusted offense level of 51.  PSR ¶ 30.  However, he received a 3-level decrease in his offense level for acceptance of responsibility, making his adjusted offense level 48.  (Doc. 29 at 8, PSR ¶¶31-33). Pursuant to Chapter 5, Part A (Comment Note 2), the defendant's total offense level was reduced to 43, resulting in a mandatory minimum sentence of 15 years in prison and an advisory sentencing range of 360 months. (Doc. 29 at 13, PSR ¶¶55-56). Keiser's counsel filed an objection to ¶10 of the PSR regarding uncharged conduct claiming that Keiser did not record the video on his cell phone of a boy going to the bathroom in a mall rest room. Rather, Keiser's counsel noted that someone else who had used Keiser's phone recorded the video. At sentencing, the court overruled the objection finding that it was relevant.

At his October 9, 2018 sentencing hearing, the court adopted the above stated findings of the PSR. The court also reviewed several items of correspondence from the defendant and his counsel, including Keiser's 13-14 page correspondence. Keiser's counsel then requested that the court impose the mandatory minimum sentence of 15 years. (S.Tr. at pp. 5-7, 11).

Keiser's counsel also noted that defendant had physical and mental issues and that he hoped defendant would be treated for them in federal prison. Defense counsel also indicated that Keiser would receive a psychological evaluation after he was sentenced, and noted that defendant

5

thought the evaluation would be conducted prior to sentencing. (S.Tr. at p. 10).

The government requested the court to sentence Keiser to the maximum 30 years in prison to reflect the extremely serious nature of the offense and in consideration his young victims.

Prior to sentencing Keiser, the court considered his childhood and stated, "you had a horrible life as a child." (S.Tr. at pp.13-14. The court then applied the factors set forth in 18 U.S.C. §3553(a), and sentenced the defendant to a term of imprisonment of 270 months, which was a 90-month downward variance from the advisory sentencing range of 360 months. (S.Tr. at p. 22). (Doc. 36).

Keiser did not file a direct appeal with the Third Circuit regarding his judgment of conviction.

On September 24, 2019, Keiser filed his instant motion under 28 U.S.C. §2255 seeking to vacate his sentence regarding his stated conviction. (Doc. 39). The motion has been briefed by the parties. (Docs. 40 & 46).

## II.   STANDARD

When a district court judge imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant]

6

may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255, ¶1; *see* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

The rule states that "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." *See* United States v. Bendolph, 409 F.3d 155, 165 n. 15 (3d Cir. 2005) (stating district courts have the power to dismiss petitions *sua sponte* during the Rule 4 stage of habeas proceedings).

A §2255 motion "is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." Paulino v. U.S., 2010 WL 2545547, *2 (W.D. Pa. June 21, 2010)(citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" U.S. v. Bates, 2008 WL 80048, *2 (M.D. Pa. Jan. 7, 2008)(quoting Mallet v. U.S., 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." U.S. v. Ayers, 938 F.Supp.2d 108, 112 (D. D.C. 2013)(citation omitted). Keiser's

instant claims fall within the purview of §2255 since they challenge the validity of his sentence based on ineffective assistance of counsel claims. Bates, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the claim on direct appeal.")(citing Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690 (2003)).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const. amend. VI. The U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," id., 687, and must prove this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., 687-88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

8

Id., 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, cf. United States v. Valenzuela–Bernal, 458 U.S. 858, 866–867 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id., 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." Ayers, 938 F.Supp.2d at 113 (citing Strickland, 466 U.S. at 700).

The Supreme Court in Strickland, 466 U.S. at 697, explained:

> there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient

showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

With respect to showing prejudice by counsel's performance regarding a guilty plea, in U.S. v. Bui, 795 F.3d 363, 367 (3d Cir. 2015), the Third Circuit stated that "[i]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." (citation omitted).

## III.   DISCUSSION

The court analyzes Keiser's claims of ineffective assistance of counsel using the two-pronged approach prescribed in Strickland. [2] Keiser must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" Strickland, 466 U.S. at

---

[2] Despite the fact that Keiser did not raise his instant claims in a direct appeal, he is not procedurally barred from collaterally attacking his sentence under §2255 since ineffective assistance of counsel claims are an exception to the general rule of procedural default. Massaro v. United States, 538 U.S. 500, 504 (2003). In fact, "ineffective assistance of counsel claims are generally not considered on direct appeal." Rather, "they are more commonly brought in a collateral proceeding, such as through a post-conviction 28 U.S.C. §2255 motion to vacate." United States v. Washington, 869 F.3d 193, 202 (3d Cir. 2017) (citation omitted).

689. No doubt, the key to a knowing and voluntary guilty plea is the effective assistance of competent counsel. *See* <u>Boyd v. Waymart</u>, 579 F.3d 330, 349 (3d Cir. 2009) (citations omitted). Also, a defendant's Sixth Amendment right to counsel "extends to the plea-bargaining process." <u>Bui</u>, 795 F.3d at 367 (citation omitted).

In his §2255 motion, Keiser requests the court to vacate his 270-month sentence. Keiser generally raises 23 claims of ineffectiveness by his trial counsel but he does not specifically address each one of his claims as required to meet his burden with respect to his motion. *See* <u>Parke v. Raley</u>, 506 U.S. 20, 31, 113 S.Ct. 517 (1992) ("[Supreme Court] precedents make clear, . . ., that even when a collateral attack on a final conviction rests on constitutional grounds, the presumption of regularity that attaches to final judgments makes it appropriate to assign a proof burden to the defendant."). Since Keiser's voluminous claims are stated in his motion, (Doc. 39 at 5-7), as well as the government's opposition brief, (Doc. 46 at 14-15), the court does not repeat them herein.

Initially, the government contends that Keiser "has failed to demonstrate that, but for his counsel's alleged deficient performance, the result of the case would have probably been different", and that "it is easier to dispose of the ineffective assistance claims in this case on the ground of lack of sufficient prejudice thereby demonstrating that there is no need to hold a hearing for the Court to determine whether counsel's performance was deficient."

11

"[The court] may consider the two <u>Strickland</u> prongs in either order; and, as [the Third Circuit] ha[s] observed, it is 'often practical to consider the prejudice prong first," not the least because we 'prefer[ ] to avoid passing judgment on counsel's performance when possible." <u>United States v. Washington</u>, 869 F.3d 193, 206 (3d Cir. 2017) (internal citations omitted). Here, the court will first consider the prejudice prong which, as discussed below, is determinative.

In <u>Bey v. Superintendent Greene SCI</u>, 856 F.3d 230, 242 (3d Cir. 2017), the Third Circuit discussed the prejudice requirement in determining whether counsel's performance was deficient and stated:

> Prejudice requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A "reasonable probability" is one "sufficient to undermine confidence in the outcome." The prejudice standard "is not a stringent one" and is "less demanding than the preponderance standard." However, a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

(internal citations omitted) (emphasis original).

Keiser makes the unsupported allegation that "[i[f the court were presented with evidence of [his] competency … in a motion for a mitigated sentence, then possibly [he] would have received the 15-year mandatory sentence and not the [22.5] year sentence." (Doc. 40 at 9). The court however finds that with respect to all 23 claims raised by Keiser, he has failed to show how he was prejudiced by his trial counsel's alleged ineffectiveness

12

particularly since his Criminal History Category and offense level of 43 exposed him to an advisory sentencing range of life in prison, but the advisory range was capped by the statutory maximum sentence of 30 years. Further, although the government strenuously argued for the court to impose a sentence of 30 years, (*see* S.Tr., pp. 12-13), recounting that Keiser "perpetrated sexual acts on multiple small children", Keiser's trial counsel stressed defendant's need for therapy and treatment and successfully persuaded the court to vary downward by 90 months from the 360 months advisory sentencing range. Thus, there was simply no prejudice due to any of the multitude ineffective claims raised by Keiser since his counsel's performance resulted in him receiving a 270 month sentence as opposed to the 360 month sentence he was facing, and which the government asserted he deserved.[3] The alleged errors by Keiser's counsel simply did not "work[] to his actual and substantial disadvantage." Bey, 856 F.3d at 242. In short, Keiser has failed to demonstrate that there is a reasonable probability that he would have received a less severe sentence if his counsel did not commit any of the alleged deficiencies in his performance. *See* Harrington v. Richter,

---

[3] The court also notes that to the extent Keiser now attempts to undermine the validity of his guilty plea by claiming that he was mentally incompetent, as discussed below, the transcript of his plea hearing belies this claim. Further, there is nothing in either of the transcripts (plea hearing and sentencing hearing) that even remotely shows Keiser did not understand any aspect of the hearings.

13

562 U.S. 86, 111, 112 (2011) (To establish prejudice, "[t]he likelihood of a different result must be substantial . . . .").

Further, Keiser's general assignment of numerous errors by his counsel are insufficient since he has failed to demonstrate how he was prejudiced by each of his claims of ineffectiveness. As the government points out, (Doc. 46 at 23), "[w]here a 'petition contains no factual matter regarding Strickland's prejudice prong, and [only provides] ... unadorned legal conclusion[s] ..., without supporting factual allegations,' that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief." (citing Palmer v. Hendricks, 592 F.3d 386, 395 (3d Cir. 2010)). It is not the court's obligation to troll the record and search for evidence to support the defendant's ineffectiveness claims. Rather, it was incumbent on Keiser "to present 'factual allegations, which, if true, would entitle [him] to federal habeas relief' under Strickland's prejudice prong." Palmer, 592 F.3d at 395. As such, Keiser unsubstantiated claims that his trial counsel's performance was deficient under Strickland fail since he has not shown that he was prejudiced by any of his counsel's alleged omissions.

Thus, based on his failure to meet his burden to establish the prejudice prong of his ineffective assistance of counsel claims, the court will deny his instant motion.

Moreover, even considering Keiser's numerous unfounded claims of ineffectiveness of his trial counsel regarding his counsel's alleged failure to

address issues with respect to his mental health and failure to have had him evaluated for competency, (*see* Doc. 40 at 5-6), as the government states, "[Keiser's] motion and brief do not provide any factual allegations that would support the conclusion that the result of the proceeding would have been different if counsel had taken the actions [he] now claims should have been taken", and "[he] does not allege any facts to show he was, in fact, incompetent at the time of the offense, during his guilty plea proceeding or during his sentencing. (Doc. 46 at 25). Nor has Keiser submitted any evidence showing that he was incompetent. Keiser's September 3, 2018 letter to the court alleging the Probation Officer who met with him regarding the PSR asked him if he was willing to have a psychological exam and that he responded he would, (*see* Doc. 39-1 at 4), does not constitute evidence showing that he was suffering from any mental condition or infirmity. In fact, Keiser's letter is coherent and intelligently written. In any event, as defense counsel indicated at sentencing, Keiser's psychological evaluation was to occur after his sentencing. Nor does Keiser's November 5, 2017 request to the staff at Lackawanna County Prison "to speak with medical [department] about my health issues" alleging that "the pain is unbearable and keeps increasing", (*see* Doc. 39-1 at 2), demonstrate that he was suffering from any mental condition or that his competency should have been evaluated. Additionally, Keiser's self-described symptoms reported in the PSR, ¶'s 44 & 47, alleging that he experienced memory loss and brain swelling related to an incident when he was 17 years old are not persuasive, particularly since

Keiser has not provided any evidence or medical records to support any claim that he was mentally incompetent during the relevant times of this case.

Indeed, based on the court's observation of Keiser during his guilty plea hearing and his sentencing hearing, and based on the transcripts, it is clear that he understood the nature of the proceedings, and that he intelligently and knowingly pled guilty. Specifically, the court, after observing Keiser and questioning him found that he was "in fact, competent to enter a plea of guilty", and stated, "[i]t is clear to me that you understand the questions that I'm asking you and that you are able to respond intelligently to those questions." (G.Tr., p. 3). After conducting the lengthy plea colloquy, the court then concluded that "[Keiser] [has] entered into the plea agreement knowingly, intelligently, and voluntarily of your own free will, that you have had ample time to discuss it with your counsel in this particular case, and that you understand the contents of the plea agreement." The record also belies Keiser's claims his counsel was ineffective for failing to advise him of the consequences of his guilty plea and that he was giving up his right to a trial. (Id. at pp. 3-22).

Nor is there any merit to Keiser's claims, (*see* Doc. 39 at 6-8), that his counsel was ineffective for the following:

> failure to investigate available defenses; failure to research "critical" points of law; failure to effectively negotiate plea agreement provisions; failure to file discovery requests and motions; failure to provide legal representation under ABA Standards; failure to "unearth for consideration at the sentencing phase all relevant mitigation information"; failure to present mitigating evidence "in general"; failure to present mitigating evidence and familiarize himself concerning the

defendant's social background, education, abusive history, stability, and family; and failure to investigate or call mitigating and/or character witnesses.

As the government, (Doc. 46 at 27-28), points out:

[Keiser] does not identify any potential defenses, he does not identify the "critical" points of law defense counsel allegedly failed to research, he does not identify plea agreement provisions that should have been negotiated, he does not identify discovery requests or motions that should have been filed, he does not explain what ABA standards defense counsel allegedly did not meet, and he does not identify mitigating evidence or character witnesses defense counsel should have presented.

In fact, there was an abundance of evidence against Keiser, including his own admission that he "traded self-produced child pornography images and videos via the WhatsApp chat messenger", as well as the over 2000 images and several videos of child pornography recovered during forensic examination of his electronic devices. PSR, ¶¶ 5-6. The record of the guilty plea colloquy also undermines Keiser's claims as he admitted to the detailed facts regarding the offense to which he pled guilty at his guilty plea. (*See* G.Tr. at 17-19).

The record also belies Keiser's claim that his counsel failed to present mitigating evidence since the sentencing hearing transcript shows that the court considered such evidence, including, Keiser's "horrible life as a child", Keiser's correspondence and a letter regarding his character, and statements from the mother of his child. (S.Tr., pp. 13-14). Keiser's

17

educational history was also clearly presented in the PSR as detailed above. PSR, ¶50.

Consequently, largely based on the mitigating evidence, the court gave Keiser a 90-month downward variance and imposed a sentence of 270 months in prison, a significant reduction from the advisory guideline range of 360 months. In fact, Keiser's claim that his counsel was ineffective for failing to request a downward departure or variance, (*see* Doc. 40 at 5, ¶(f)), is completely inaccurate. At sentencing, the court considered defense counsel's request to impose "the minimum sentence" as a request for a downward variance (S.Tr., pp. 7, 22). Keiser's claim that his counsel was also ineffective for failure to file a sentencing memo likewise fails since all of the pertinent matters were raised and discussed, and were considered by the court at his sentencing.

Thus, none of the alleged errors by his counsel had any conceivable effect on the outcome of Keiser's case. Further, it is well-settled that an attorney does not provide ineffective assistance by failing to raise meritless arguments, and the court has found that Keiser's claims, unsupported by facts, are meritless. *See* United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999); Ross v. Dist. Attorney of the Cnty. of Allegheny, 672 F.3d 198, 211 n. 9 (3d Cir. 2012) ("[C]ounsel cannot be deemed ineffective for failing to raise a meritless claim.").

Accordingly, the court finds no merit to any of the claims raised in Keiser's §2255 motion based on his failure to meet his burden and show any

18

prejudice he suffered as a result of the alleged deficiencies in his trial counsel's performance.

Finally, since the court has found that Keiser has not met his burden to show any prejudice due to his counsel's alleged ineffectiveness, the court need not discuss whether his counsel's performance was objectively unreasonable. *See* United States v. Washington, 869 F.3d 193, 204 (3d Cir. 2017) ("[B]oth deficiency and prejudice must be proven to have a valid [ineffective assistance of counsel] claim for relief.") (citation omitted).

## IV.   EVIDENTIARY HEARING

Although Keiser does not specifically request an evidentiary hearing in his §2255 motion, the government raises this issue in its brief and contends that no hearing is required. Thus, the court will address whether an evidentiary hearing is appropriate in this case.

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b). *See* United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992) (The court is required to conduct an evidentiary hearing to ascertain the facts "unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.")(citation omitted). In considering a §2255 motion, the "district court must 'accept the

truth of the movant's factual allegations unless they are clearly frivolous on the basis of the existing record.'" Johnson v. U.S., 294 Fed.Appx. 709, 710 (3d Cir. 2008) (citation omitted). However, the court need not accept the petitioner's allegations as true if they "are unsupported by specifics [or] wholly incredible in the face of the record.") Patton v. United States, 2010 WL 3191887, *1 (W.D. Pa. 2010) (citing United States v. Estrada, 849 F.2d 1304,1307 (10th Cir. 1988)); *see also* Melter v. United States, 2016 WL 7163591, *3 (M.D. Pa. Dec. 7, 2016) ("The district court, however, without further investigation may dispose of 'vague and conclusory allegations contained in a §2255 petition.'") (citation omitted). A review of the motion, Keiser's and the government's briefs, and the record, as well as the law, make it clear that Keiser's numerous allegations of ineffective assistance of trial counsel are wholly unsupported by the record. The court finds that Keiser is not entitled to an evidentiary hearing because the record conclusively establishes that he is not entitled to the relief sought in his §2255 motion. Therefore, the court, in its discretion, finds no reason to hold an evidentiary hearing.

## V.    CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C.

§2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Keiser has shown neither the denial of a constitutional right nor that jurists of reason would disagree with this court's resolution of his claims.

## VI. CONCLUSION

Based on the foregoing, the court finds Keiser fails to show his trial counsel was ineffective or deficient in any way. Therefore, the court will **DENY** Keiser's §2255 motion without an evidentiary hearing. (Doc. 39). No COA will issue. An appropriate order shall follow.

s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

**DATE: January 7, 2021**

17-251-02

21